**AETNA CASUALTY AND SURETY COMPANY, Appellant,**

v.

**Jayne Ann WOODS, Commissioner of Revenue, State of Tenn. and Henry T. Vance, Jr., Appellees.**

Supreme Court of Tennessee.

May 8, 1978.

Phillip North, Nashville, for appellant; Howell & Fisher, Nashville, of counsel.

Davis S. Weed, Asst. Atty. Gen., Nashville, for appellees; Brooks McLemore, Jr., Atty. Gen., Nashville, of counsel.

## OPINION

BROCK, Justice.

This is an action to recover sales taxes and franchise and excise taxes paid under protest by the plaintiff to the defendant Commissioner of Revenue. The Chancery Court heard the case on the merits and rendered a decision in favor of the Commissioner from which the plaintiff appeals.

The disputed taxes were paid by the plaintiff in its capacity as surety on a bond required by T.C.A., § 57–158(3), to be posted by applicants for licenses to sell liquor by the drink. The principals were Andrew Johnson Properties, Inc., and its president, Henry T. Vance, Jr.

The corporation owned and operated the Andrew Johnson Hotel in Knoxville and the bond in question was executed when it was decided to open a cocktail lounge in a portion of the hotel premises. Within a few months after the bond was posted, the cor-

poration bankrupted and went out of the hotel business, including operation of the lounge.

The issue presented is not whether the disputed taxes were duly owing and payable by the taxpayer but whether the bond obligation assumed by the plaintiff-surety included payment of sales taxes and franchise and excise taxes incurred by the taxpayer, not in connection with the operation of the lounge, but in connection with its other business activities, such as renting the rooms in the hotel.

The record indicates that the receipts from the lounge amounted to approximately 10 percent of the total receipts of the hotel corporation and that the taxes incurred in the sale of alcoholic beverages for consumption on the premises amounted to a total of $1,203.44 while the taxes incurred in connection with the other hotel operations amounted to $6,222.72, sales tax, and $1,411.70, franchise and excise tax.

The bond was drafted by the Commissioner or her predecessor, and is entitled:

## "BOND

### SALE OF ALCOHOLIC BEVERAGES FOR CONSUMPTION ON THE PREMISES."

It provides, in pertinent part, as follows: "The above amount ($10,000.00), may be subject to adjustment after the business has been in operation for three complete calendar months, at which time the penal sum thereof shall be no less than four times the average monthly liability of all taxes applicable to sales of alcoholic beverages during the initial three month period . . . . Annually thereafter, the penal sum of the bond shall be for an amount no less than four times the average monthly tax liability for all taxes resulting from sales of alcoholic beverages.

\*    \*    \*    \*    \*    \*

"WHEREAS, the conditions of this obligation are such that the above bounden principal, who has been issued a permit to

sell alcoholic beverages for consumption on the premises, as authorized by Chapter 1, Title 57, of the Tennessee Code Annotated, is required by said Chapter to pay gross receipts tax in the amount of 15 per cent of the sales price of all alcoholic beverages sold for consumption on the premises; . . . .

"AND WHEREAS, said principal is further obligated by said Chapter to post with the Commissioner of Revenue an indemnity bond to secure the proper payment of all taxes for which the principal may become liable, such taxes to include, but not limited to, those levied by Section 57–157, T.C.A., and Sales Taxes imposed under Chapter 30 of Title 67, T.C.A., applicable to sales of alcoholic beverages. "NOW, THEREFORE, if the above bounden principal shall faithfully perform the duties imposed upon him and shall well and truly comply with all of said laws and the Rules and Regulations pursuant thereto and shall particularly, promptly and properly account to the State of Tennessee for all sales of alcoholic beverages sold to be consumed on the premises and pay all taxes, interest and penalties for which the licensee may become liable, as provided by statute and any Rule and Regulation promulgated thereunder, such taxes to include, but not limited to, those levied by Section 57–157, T.C.A., and Sales Taxes applicable thereto imposed under Chapter 30 of Title 67, T.C.A., then this obligation shall be null and void; otherwise it shall remain in full force and effect. * * * "

■ The proper construction of a contractual document is not dependent on any name given to the instrument by the parties, or on any single provision of it, but upon the entire body of the contract and the legal effect of it as a whole. *Arbuckle v. Kirkpatrick,* 98 Tenn. 221, 39 S.W. 3 (1897).

■ The whole contract must be considered in determining the meaning of any or all of its parts. *Crouch v. Shepard,* 44

Tenn. 383 (1867); *Associated Press v. WGNS, Inc.,* 48 Tenn.App. 407, 348 S.W.2d 507 (1961); *Restatement of Contracts* § 235(c).

"The principal apparent purpose of the parties is given great weight in determining the meaning to be given to manifestations of intention of any part thereof." *Restatement of Contracts* § 236(b).

■ The bond here in question was authorized and required by Section 3 of Chapter 211 of the Public Acts of 1967, now codified as T.C.A., § 57–158. We may assume, therefore, that the purpose of the parties in executing this bond was to comply with the requirements of that statute, nothing more and nothing less.

■ Although a bond is nonetheless a contract because it is required by a statute, statutory bonds are construed in the light of the statute creating the obligation secured and the purposes for which the bond is required, as disclosed in the statute. The statute which provides for the giving of a bond becomes a part of the bond and imports into the bond any conditions prescribed by the statute which are not in fact included in the bond as written. Although the obligor and his surety may assume a greater obligation than that required by the statute,[1] it is presumed that the intention of the parties was to execute such a bond as the law required. *State ex rel. County Court of Pleasants County v. Anderson,* 140 W.Va. 827, 87 S.E.2d 249 (1955).

■ The obligations under a bond required by statute are to be measured by the particular statute requiring the bond, together with other applicable statutes. *Giese v. Engelhardt,* N.D., 175 N.W.2d 578 (1970). And, if a statutory bond contains conditions that are not prescribed by the statute, such conditions may be eliminated as surplusage. *American Casualty Company v. Irvin,* 426 F.2d 647 (5th Cir. 1970); *Stevens v. Farmers Elevator Mutual Ins. Co.,* 197 Kan. 74, 415 P.2d 236 (1966);

---

1. *See Varner Construction Co. v. Mid-South Specialties,* Tenn., 547 S.W.2d 569, 571 (1977); *City of Knoxville v. Burgess,* 180 Tenn. 412, 175 S.W.2d 548 (1948).

*Monte Rico Mill and Mining Co. v. USF&G Co.,* 35 N.M. 616, 5 P.2d 195 (1930); *Western Casualty & Guaranty Ins. Co. v. Muskogee County,* 60 Okl. 140, 159 P. 655 (1916).

■ Therefore, we turn to the statute which authorized and required the execution of this bond in order to ascertain the scope of liability required by the statute of one who executes such a bond. In construing the statute, we seek to ascertain the intention of the legislature as it is expressed in the words of the statute and for this purpose we look to the entire statute, including its caption, policy statement, if any, and recitals which provide the purpose, objective and spirit behind the legislation. *Dorrier v. Dark,* Tenn., 537 S.W.2d 888 (1976); *Harrell v. Hamblen County Quarterly Court,* Tenn.App., 526 S.W.2d 505 (1975).

The statutory provisions for the bond as well as the taxes here involved were constituent parts of Chapter 211 of the Public Acts of 1967, now codified as T.C.A., §§ 57–152—57–164, which authorized the sale of intoxicating liquors by the drink for consumption on the premises, imposed taxes upon such sales and provided for the collection thereof. In order that the bond provisions may be seen in context, we quote pertinent portions of that Act, as now codified, which appear both before and after the bond provision:

"57–157. *Consumption on premises— Privilege taxes—Tax on retail sales.*—It is hereby declared the legislative intent that every person is exercising a taxable privilege who engages in the business of selling at retail in this state alcoholic beverages for consumption on the premises. For the exercise of such privilege, the following taxes are levied for state purposes to be paid annually, to wit:

\* \* \* \* \* \*

"(b) In addition to the privilege taxes levied in (a) above, there is further levied a tax equal to the rate of fifteen per cent (15%) of the sales price of all alcoholic beverages sold for consumption on the premises, . . . .·

"57–158. *Collection of taxes.*—The commissioner of revenue of the state of Tennessee is charged with the responsibility of collecting *all taxes set out herein* due to the said state, and in addition, to the requirements set out herein, is authorized to promulgate such rules and regulations as will further implement the full collection of *all taxes herein imposed.*

"(1) . . . The *tax hereby imposed* shall be collected by the retailer from the consumer insofar as it can be done.

\* \* \* \* \* \*

"(3) BOND OF LICENSEE—Every licensee permitted to do business in the state of Tennessee shall, as a condition precedent to the granting of his license, in addition to all other requirements set out herein, post with the commissioner of revenue of the state of Tennessee, an indemnity bond with good and solvent corporate surety, approved by him, in an amount equal to four (4) times the average monthly tax liability as determined by the commissioner or in the amount of one thousand dollars ($1,000) whichever is greater, *conditioned upon the proper payment of all taxes for which the sale licensee may become liable.* The forfeiture or cancellation of said bond, for any reason whatsoever, shall automatically revoke the license granted herein. The bond provided for herein shall run for such time as may be determined by the commissioner.

"(4) TIME OF PAYMENT—The *taxes levied hereunder* in subdivision (b) of § 57–157 shall be due and payable monthly, . . . . .

"(5) TAX TRANSMITTED WITH RETURN—At the time of transmitting the return required hereunder to the commissioner the licensee shall remit to him therewith the amount of *tax due under the applicable provisions of this chapter* . . . . .

"57–159. *Settlement of tax on quitting business.*—If any licensee liable for any tax, interest or penalty *levied hereunder* shall sell out . . . . .

"57–160. *Interest and penalties for delinquency—Extension of time for making return.*—When any licensee shall fail to make any return and pay the full amount of the *tax required by this chapter* . . [i]n the case of a false or fraudulent return, where willful intent exists to defraud the state of *any tax due under this chapter,* . . . .

"57–161. *Collection of tax from debtor of licensee.*—In the event any licensee is delinquent in the payment of *the tax herein provided for,* . . . ." (Emphasis added.)

■ Admittedly, if subparagraph 3 of § 57–158, above quoted, were lifted totally out of context and considered alone, the condition of the bond required could be construed as requiring proper payment of all taxes of whatever nature, whether arising from the sale of alcoholic beverages for consumption on the premises or not. But, as indicated by the authorities above referred to, it is our duty to construe the statutory provision respecting the bond as an integral part of the whole statute rather than as an isolated provision lifted out of context from the remainder of the statute. When one considers the obvious purpose of the statute to provide for the authorization and regulation of the sale of intoxicating liquors by the drink for consumption on the premises of the sellers and to levy taxes upon such sales and provide for the collection thereof, we think the conclusion is inescapable that the intent of the legislature was to require a bond whose obligation is limited to payment of all state taxes which are incurred by the sale licensee by reason of his sale of alcoholic beverages for consumption on the premises. In our opinion, the legislature did not intend that such a bond should cover taxes incurred by a sale licensee by reason of activities other than the sale of intoxicating liquors for consumption on the premises.

■ We assume that the Commissioner in drafting the bond intended to exact from the obligor and surety the obligation required by the statute and no more, since that was the extent of the Commissioner's duty in this respect under the statute; and, considering the disadvantageous bargaining position of the taxpayer and his surety, we cannot ascribe to them, on the basis of the evidence in this record, an intention to assume an obligation greater than the one required by the statute. Moreover, we deem it of considerable significance that the penal sum of the bond is measured by a multiple of "the average monthly liability of *all taxes applicable to sales of alcoholic beverages* . . . ."

The Commissioner argues that the words, " . . . such taxes to include, *but not limited to,* those levied by § 57–157, T.C.A., and sales taxes applicable thereto imposed under Chapter 30 of Title 67, T.C.A., . . . " (Emphasis added.) disclose an intention to include within the obligation of the bond taxes in addition to those applicable to sales of alcoholic beverages. However, considering the context in which these words appear and considering the obvious overall purpose of the statute, we are unable to agree with that conclusion.

We think it also of considerable significance that the statutes which levy the sales taxes and franchise and excise taxes which the Commissioner contends are covered by the obligation of this bond do not specifically require the posting of an indemnity bond as does the sale of alcohol by the drink statute. We are not aware that such statutes contain any bond requirement or authorization other than those found in T.C.A., §§ 67–3020(c) and 67–3033, which deal with sales taxpayers who have become delinquent. These provisions do not apply to the parties or the situation disclosed by this record.

■ In summary, we hold that the bond in question is limited in its obligation to the payment of only those taxes levied by the State of Tennessee and incurred by the sale licensee in connection with the sale of alcoholic beverages for consumption on the premises; and that the plaintiff surety is entitled to recover from the defendant Commissioner all taxes paid under protest,

with interest, which were not incurred by the taxpayer in connection with the sale of liquor by the drink for consumption on the premises. The decree of the trial court is reversed and the case is remanded to that court for appropriate proceedings consistent with this opinion. Costs are taxed against the Commissioner.

HENRY, C. J., and FONES, COOPER and HARBISON, JJ., concur.