**EXCHANGE MUTUAL INSURANCE CO., Plaintiff-Appellant,**

v.

**Martha B. OLSEN, Commissioner of Revenue, Defendant-Appellee.**

Supreme Court of Tennessee.

Aug. 22, 1983.

Gary S. Rubenstein, Nashville, for plaintiff-appellant.

Charles L. Lewis, Asst. Atty. Gen., Nashville (William M. Leech, Jr., Atty. Gen. and Reporter, Nashville, of counsel), for defendant-appellee.

## OPINION

DROWOTA, Justice.

The Plaintiff, Exchange Mutual Insurance Company, appeals from an adverse judgment in the Chancery Court. On September 12, 1980, the Plaintiff issued its surety bond in favor of the state of Tennessee for taxes "connected with the sale of alcoholic beverages for consumption on the premises accruing against the principal [Printers Alley Entertainment, Inc., d/b/a Jerry Lee Lewis Printers Alley Showroom]." According to the terms of the bond, the liability of the Plaintiff was limited to a maximum of $10,000, and coverage was to be effective from September 10, 1980, through May 15, 1981. The Plaintiff issued the bond pursuant to the provisions of T.C.A. § 57–158, now § 57–4–302(3). The terms state that the bond "is intended to comply with all requirements of such statute." Section 57–4–302(3) provides the bond must be "conditioned upon the proper payment of all taxes for which the sale licensee may become liable." When the licensee of the premises, Printers Alley Entertainment, Inc., defaulted on its payment of taxes for the privilege of selling liquor by the drink, the Plaintiff paid the amount due. There were also delinquent general sales taxes, imposed by T.C.A. § 67–3001 *et seq.,* which the Plaintiff did not pay. On August 17, 1982, the Defendant, Martha B. Olsen, demanded payment of the $1934.73 delinquent sales taxes. The Plaintiff paid the amount under protest and brought suit to recover the payment.

The Plaintiff contends that its surety bond indemnifies the licensee only against taxes assessed on the privilege of selling liquor by the drink, which taxes are imposed by T.C.A. § 57–4–301; that the bond was not intended to cover general sales taxes; and that the statute does not require the surety to indemnify against delinquent sales taxes. Having before him cross motions for a judgment on the pleadings, the Chancellor granted judgment for the Defendant and dismissed the suit, finding T.C.A. § 57–4–302(3) imposes liability upon the surety for sales taxes resulting from the sale of alcoholic beverages for consumption on the premises as well as for taxes assessed on the privilege of selling liquor by

the drink. This appeal was taken from the Chancellor's order dismissing the suit.

■ The only question which we are asked to decide is whether the Chancellor correctly held T.C.A. § 57–4–302(3) requires the surety to indemnify against both the taxes in question here. In deciding the Plaintiff's liability, the requirements of the statute, and not the terms of the bond, are controlling. *Aetna Casualty & Surety Co. v. Woods,* 565 S.W.2d 861 (Tenn.1978). Any provisions of the bond which purport to diminish the surety's statutory liability are mere surplusage. *Id.*

The Court, in *Aetna,* had occasion to consider whether T.C.A. § 57–4–302(3) imposed liability on the surety for the principal's delinquent taxes resulting from business dealings other than the sale of alcoholic beverages for consumption on the premises. The principal operated a hotel corporation. In connection with the hotel business, the principal operated a lounge where liquor was sold by the drink. The commissioner collected from the surety the principal's delinquent tax liabilities from the sale of liquor for consumption on the premises and sales, franchise and excise taxes from the hotel operations. The Court held the legislature did not intend, and the statute does not require, a surety to indemnify the principal against tax liabilities other than those incurred as a result of selling liquor by the drink.

Because the surety in *Aetna* did not question its liability for sales taxes on liquor sold for consumption on the premises,[1] the question of whether the statute required such indemnity was not addressed head-on. In the present case, the Plaintiff argues that § 57–4–302(3), in referring to "all taxes for which the sale licensee may become liable," includes only the taxes assessed within Chapter 4. Section 57–4–301 imposes privilege taxes, retail sales taxes and

carrier license fees. The Plaintiff continues by arguing that since the general sales taxes are not imposed under this chapter, but rather under T.C.A. § 67–3001, *et seq.,* "all taxes" does not include the sales tax.

■ We cannot agree. The most salient reason for our rejecting the Plaintiff's argument is the plain wording of § 57–4–302(3):

> Bond of Licensee—Every licensee permitted to do business in the state of Tennessee shall, as a condition precedent to the granting of his license, in addition to all other requirements set out herein, post with the commissioner of revenue of the state of Tennessee, an indemnity bond with good and solvent corporate surety, approved by him, in an amount equal to four (4) times the average monthly tax liability as determined by the commissioner or in the amount of one thousand dollars ($1000), whichever is greater, *conditioned upon the proper payment of all taxes for which the sale licensee may become liable.* The forfeiture or cancellation of said bond, for any reason whatsoever, shall automatically revoke the license granted herein. The bond provided for herein shall run for such time as may be determined by the commissioner[.] (Emphasis added).

The statute requires that the bond be conditioned on the proper payment of *all taxes,* not just taxes "herein imposed." Elsewhere in subsections of § 57–4–302 reference is made to "taxes herein imposed," "tax payable under this chapter," and "tax due under the applicable provisions of this chapter." None of these words of limitation is found in subsection (3).

In addition, a look at the entire statute and its purposes convinces us the legislature intended this result. An overview of the statute led us to our holding in *Aetna.* There, we stated,

> When one considers the obvious purposes of the statute to provide for the autho-

---

1. One reason there was no question about this tax was that the bond specifically stated its coverage of sales taxes applicable to the sale of liquor for consumption on the premises imposed by Chapter 30 of Title 67. But had there been a question, the absence of this provision in the bond would not have been controlling.

rization and regulation of the sale of intoxicating liquors by the drink for consumption on the premises of the sellers and to levy taxes upon such sales and provide for the collection thereof, we think the conclusion is inescapable that the intent of the legislature was to require a bond whose obligation is limited to payment of all state taxes which are incurred by the sale licensee by reason of his sale of alcoholic beverages for consumption on the premises.

565 S.W.2d at 366. Just as our review of the entire statute persuaded us in *Aetna* that the legislature was not concerned with the taxable activities of a hotel operation, such a review also persuades us the legislature intended to condition the issuance of a liquor license on the absolute assurance that all tax liabilities resulting from the sale of liquor by the drink would be taken care of.

We hold a surety bond executed pursuant to § 57–4–302(3) indemnifies the principal against all taxes for which the sales licensee may become liable, including general sales taxes imposed by § 67–3001, *et seq.* The judgment of the Chancellor is affirmed. The costs of this appeal will be borne by the Plaintiff.

FONES, C.J., BROCK and HARBISON, JJ., and HUMPHREYS, Special Justice, concur.